ON WRIT OF CERTIORARI

WALLER, Chief Justice,
for the Court:
¶ 1. In the summer of 2010, a George County sheriffs deputy attempted to pull over a Chevrolet pickup truck. In the truck were Christopher Baxter and Brandy Williams. The truck did not stop, and a high-speed chase ensued. In an effort to apprehend the two, the George County Sheriffs Department set up a roadblock. The truck, however, did not stop, and Sheriff Garry Welford was run over and killed.
¶ 2. Baxter and Williams were charged with capital murder and tried separately. Baxter was convicted and sentenced to life in prison without the possibility of parole. He appealed, and the Court of Appeals affirmed his conviction. This Court subsequently granted Baxter’s petition for cer-tiorari.
¶ 3. Finding no reversible error at the trial-court level or at the Court of Appeals, we affirm. We write, however, to discuss the differences between Baxter v. State and Williams v. State, Compare Baxter v. State, 177 So.3d 423, 2014 WL 3715840 (Miss.Ct.App.2014), reh’g denied (Nov. 25, 2014), cert. granted (Miss. Feb. 19, 2015), and Williams v. State, 174 So.3d 275, 278 (Miss.Ct.App.2014).
FACTS AND PROCEDURAL HISTORY
¶ 4. The facts and procedural history are taken from the Court of Appeals opinion.
When Baxter failed to appear at a sentencing hearing on July 19, 2010, [the trial court issued] a bench warrant ... for his arrest. On July 21, 2010, Sheriff Welford told Deputy Bobby Daffin about the bench warrant and instructed him to be on the lookout for Baxter. Deputy Daffin knew Baxter and his girlfriend, Brandy Williams, from their prior encounters with law enforcement. Later that same day, Deputy Daffin saw Williams driving her father’s maroon Chevrolet Z71 pickup truck in Lucedale, Mississippi. Deputy Daffin had seen ... Williams[ ] driving the truck before, and he knew that Baxter was usually in the truck with her. Deputy Daffin could see the arm of a passenger, who appeared to be leaning back in the seat in order to hide. He could not see the passenger’s face, but based on his suspicion that the passenger was Baxter, he made a u-turn on Old Highway 63 and drove toward the truck to further investigate.
As Deputy Daffin neared the truck ... the driver fled at a high rate of speed. After witnessing the truck pass several cars in a no-passing zone and force other vehicles off the road, Deputy Daffin initiated his blue lights.... The driver refused to stop, leading law enforcement on a seventeen-mile chase, with speeds reaching over 100 miles per hour. Based on information received from Deputy Daffin regarding the truck’s location, Sheriff Welford and Deputies John Keel, Duane Bowlin, and Justin Bowlin positioned themselves at the intersection of Bexley and Howard Roads to intercept the truck. The sheriff and deputies were wearing uniforms; and although their vehicles were unmarked, the vehicles’ blue lights were activated. Approximately two minutes after arriving at the intersection, the *397 deputies heard a vehicle approaching. [They then saw] Williams’s truck ... speeding toward them. According to one of the deputies at the scene, it seemed that the truck never attempted to slow down, but rather continued to accelerate through the intersection. The deputies attempted to get out of the ... way. The truck swerved around the unmarked cars, striking Sheriff Welford in the process. Sheriff Welford was thrown to the side of the road, [but the truck did not stop]. Paramedics were called, and Sheriff Welford was taken by helicopter from the scene to a hospital in Mobile, Alabama, where he died. None of the officers could positively identify the driver at the time Sheriff Welford was struck. None of the deputies saw the driver’s face.
Williams’s truck was found wrecked in a creek. The center of the truck’s hood was noticeably dented. Baxter and Williams were found [that] morning ..., hiding in a trailer in the woods. Baxter was in. a closet. He refused to surrender his hands for the officers to handcuff him, so he was tased. He then complied and was arrested.
Once in custody, Baxter waived his Miranda rights and admitted to his participation in the high-speed chase. He confessed that he was the driver for the entire pursuit. However, after he was informed that the driver could be determined from security-camera footage, he admitted that Williams was initially driving, but explained that they switched seats before the sheriff was hit. He was adamant that Williams played no part in the crime, only acting at his direction. He stated that they fled because a deputy had “got behind us” and that he then “took [the deputy] for a ride ... down a bunch of roads.” He saw patrol vehicles as he rounded the curve at the intersection of Bexley and Howard Roads, and also saw deputies standing in the road. He admitted that he “might of nudged one of them or something” with the truck’s bumper. Although his memory was unclear, Baxter believed that immediately after this happened, he looked at Williams and said, “I may have f* ⅜ *ed up.” He then went around a curve, lost control of the truck, and the truck slid off the road into a ditch. He and Williams fled on foot through the woods and sought refuge in an abandoned trailer. [Law enforcement video recorded] Baxter’s confession, [and it] was admitted into evidence.
All but one of the witnesses testified that a female was driving during the chase. The witness who saw Williams’s vehicle near the intersection where the sheriff was struck testified that she saw a male driver. Deputy Bowlin, who saw the vehicle at the moment of impact, testified that the passenger [appeared to have] the same hairstyle as Baxter, but he did not get a clear look. None of the deputies could describe the driver. Robin Howell, Baxter’s aunt, testified that she spoke with Williams during the chase, and Williams said, “They’re everywhere. They’re everywhere. They’re all over me. I’ve got to change roads.” Howell then heard Baxter in the background say, “Just go then. Just go.”
Both Baxter and Williams were indicted for the [depraved heart] capital murder of Sheriff Welford. Baxter’s trial was held May 7-11, 2012. Williams was tried in September 2012. At both trials, it was disputed whether Baxter or Williams was the driver of the truck. Despite Baxter’s confession that he was the driver, his defense at trial was that he was merely a passenger in the truck driven by Williams, and that he did not aid or abet Williams in the crime. Both Baxter and Williams were found guilty of [depraved heart] murder and sentenced to life in the custody of the Mis *398 sissippi Department of Corrections without eligibility for parole. Baxter ... appealed].
Baxter v. State, 177 So.3d 423, 429-31, 2014 WL 3715840, at **1-2 (Miss.Ct.App.2014), reh’g denied (Nov. 25, 2014), cert, granted (Miss. Feb. 19, 2015).
¶ 5. In addition to the above facts, it is important to note that the trial court found Baxter ineligible for the death penalty under Chase v. State[1] based on the testimony of Baxter’s and the State’s expert witnesses at a pretrial hearing.
¶ 6. The Court of Appeals affirmed Baxter’s conviction, and Baxter timely filed a petition for certiorari, which this Court granted. We address two issues:[2]
1. As the jury’s mid-deliberation question demonstrated, giving instruction S-6A did not cure the confusion created by instructions S-3A, S-5 and S-7, which relieved the state of its burden of proof under the law of accomplice responsibility.
2. The circuit court erred in admitting Baxter’s involuntary, unreliable and coerced “confession.”
DISCUSSION
1. As the jury’s mid-deliberation question demonstrated, giving instruction S-6A did not cure the confusion created by instructions S-3A, S-5 and S-7, which relieved the state of its burden of proof under the law of accomplice responsibility.
¶ 7. We review jury instructions under the abuse-of-discretion standard.
Reith v. State, 135 So.3d 862, 864-65 (Miss.2014). This Court must read the instructions as a whole to determine if the jury was properly instructed. Wilson v. State, 967 So.2d 32, 36-37 (Miss.2007) (citing Burton ex rel. Bradford v. Barnett, 615 So.2d 580, 583 (Miss.1993)).
¶ 8. Baxter argues the Court of Appeals has ruled inconsistently regarding jury instruction S-7. He also argues, that the instruction allowed for a conviction if the jury concluded that his failure to appear for sentencing contributed to the sheriffs death.
¶ 9. In Baxter’s appeal, the Court of Appeals first found Baxter’s objection to S-7 proeedurally barred because his objection on appeal was different from his objection at trial. Baxter v. State, 177 So.3d 423, 445 — 46, 2014 WL 3715840, at *17 (Miss.Ct.App.2014), reh’g denied (Nov. 25, 2014), cert. granted (Miss. Feb. 19, 2015). The court nevertheless went on to provide that instructions S-6A and S-3A, when read with S-7, properly informed the jury of the law. Id.
¶ 10. In Williams v. State, however, the Court of Appeals reached a different conclusion. There, the trial court granted a jury instruction identical to S-7. Williams, 174 So.3d at 283. On appeal, the Court of Appeals found the instruction improperly shifted the burden of proof because S-7 was cumulative of three other aiding and abetting instructions provided to the jury. Williams, 174 So.3d at 283. The Court of Appeals reasoned that, given *399 the other instructions and the possible confusion created by S-7, it was impossible to say the jury did not read S-7 as requiring Williams to prove she did not commit an act that contributed to the sheriff's death. See Williams, 174 So.3d at 283.
¶ 11. On its face, it appears the Court of Appeals first found that the aiding and abetting instructions clarified S-7. Therefore, there was no error. Baxter, 177 So.3d at 445-46, 2014 WL 3715840, at *17. Then, later in the case of Baxter’s codefen-dant, the Court of Appeals found that the aiding and abetting instructions made S-7 confusing, thereby shifting the burden to the defendant. Williams, 174 So.3d at 283.
¶ 12. Putting aside the Court of Appeals’ opinion in Williams, we first address Baxter’s allegations regarding jury instruction S-7.

Jury Instruction S-7 in Baxter v. State

¶ 13. At trial, Baxter objected to S-7 as cumulative and confusing. Later, in his motion for judgment notwithstanding the verdict or, alternatively, a new trial, Baxter argued that S-7 was not only cumulative, but that it also “unconstitutionally diminished the State’s burden of proof.” We find this objection sufficiently preserved this issue for appellate review. Baxter argues that the instruction was overly broad and would allow a conviction even if the jury found his failure to appear for sentencing contributed to the sheriffs death.[3] That is, the instruction allegedly diminished the State’s burden to show Baxter actually caused the death. While we agree that S-7 is imprecise, when read with the other instructions in the context of this case, we cannot say that the trial judge abused his discretion in granting it. Under our precedent, we must determine if S-7, when read in the context of the other instructions, “fairly announce[d] the law of the case and create[d] no injustice....” Wilson v. State, 967 So.2d 32, 36-37 (Miss.2007) (citing Coleman v. State, 697 So.2d 777, 782 (Miss.1997) (quoting Collins v. State, 691 So.2d 918 (Miss.1997))). If so, “no reversible error will be found.” Id. “In other words, if all instructions taken as a whole fairly, [although] not necessarily perfectly, announce the applicable rules of law, no error results.” Id. (citing Milano v. State, 790 So.2d 179, 184 (Miss.2001)).
¶ 14. The jury instructions at issue provide:
S-3A (in pertinent part):
If you find from the evidence in this case, beyond a reasonable [doubt] that:
(1) On or about July 21, 2010, in George County, Mississippi;
(2) CHRISTOPHER LEE BAXTER, alone or in conjunction with another, killed Garry Welford, a human being and peace officer, while Garry Wel-ford was acting in his official capacity as a peace officer, with knowledge that Garry Welford was a peace officer,
(3) and that said killing was done without authority of law by any means or in any manner, in the commission of an act eminently dangerous to' others and evincing a depraved heart, *400 regardless of human life, although without any premeditated design to effect the death of any particular individual. ...
S-5:
One who willfully, unlawfully, and fe-loniously aids, abets, assists, or otherwise encourages the commission of a crime is just as guilty under the law as if he or she had committed the whole crime with his or her own hands.
S-6A:
The guilt of a defendant in a criminal case may be established without proof that the defendant did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
S-7:
The Court instructs the Jury that it is not necessary that an unlawful act of the Defendant be the sole cause of death. Responsibility attaches if the act of the Defendant contributed to the death. If you believe the Defendant committed an unlawful act or aided and abetted another in committing an unlawful act that contributed to the death of Garry Wel-ford, then the Defendant is not relieved of responsibility by the fact that other causes may have also contributed to his death.
¶ 15. In addition to these instructions, the court provided a general instruction informing the jury that the State had the burden to prove every essential element beyond a reasonable doubt, and that the defendant enjoyed a presumption of innocence until the State proved guilt beyond a reasonable doubt.
¶ 16. In Baxter’s case, the State put forth two theories. The first was that Baxter was driving at the time the truck struck Sheriff Welford; and therefore, he was guilty as the principal actor. Or, alternatively, Baxter was not driving the truck at all, but he was directing and controlling Williams, who was driving when the truck hit Sheriff Welford. And therefore, Baxter was guilty as an aider and abettor. Baxter raised as a defense that the Sheriffs Department, by negligently continuing in a dangerous pursuit and by negligently conducting the roadblock, was equally responsible for the sheriffs death. This raises the question, regarding jury instruction S-7, of whether the instructions, taken as a whole fairly, though not necessarily perfectly, announce the rule of law regarding aiding and abetting and contributory causes.
*401 ¶ 17. Here, Baxter does not dispute that S-6A properly instructed the jury on aiding and abetting. See Milano v. State, 790 So.2d 179, 185 (Miss.2001); Jones v. State, 95 So.3d 641, 648-49 (Miss.2012) (find an aiding-and-abetting instruction substantially similar to S-6A correctly informed the jury on aiding and abetting).[4] Likewise, Baxter does not challenge S-5 as an incorrect statement of law; though he did object to S-5 as commutative of S-6A. See Hoops v. State, 681 So.2d 521, 533 (Miss.1996) (“Any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an aider and abettor and is equally guilty with the principal offender.”).
¶ 18. Whether instruction S-7 is a precise statement of the law, however, is at issue. As noted above, the trial court provided two correct jury instructions addressing aiding and abetting. In contrast, a comparison with S-7 and an examination of the relevant caselaw reveals that it is an incorrect statement of aiding-and-abetting law. See Milano, 790 So.2d at 185 (adopting the Fifth Circuit’s Pattern Jury Instruction on Aiding and Abetting, which is same instruction as S-6 given in this case).[5] However, the State did not offer S-7 as an aiding-and-abetting instruction. At trial, the prosecution stated the instruction went to multiple contributing causes of an injury, and it was under this context that the trial court granted the instruction. Baxter raised no objection to the instruction in this regard.
¶ 19. The instruction, as the State provided at trial, was drawn from cases in which there is more than one cause of an injury. Specifically, the State cited a case in which a victim was struck on the head with a club and subsequently died due, in part, to maltreatment by his attending physician. See Fairman v. State, 513 So.2d 910, 913 (Miss.1987) (holding that the test for responsibility in such circumstance “is whether the act of the accused contributed to the death, and, if it did, he is not relieved of responsibility by the fact that other causes also contributed.”). This instruction goes to Baxter’s defense that, the Sheriffs Department’s conduct contributed to Sheriff Welford’s death.
¶ 20. The trial court, however, also permitted aiding-and-abetting language in the instruction. This makes it understandable why Baxter’s objections at trial and on appeal to S-7 are couched in the terms of aiding-and-abetting law. But that does not change the fact that the instruction was offered and accepted as a contributing-cause instruction.
¶ 21. While the instruction’s language is problematic, our law does not require jury instructions to be perfectly worded, so long as the instructions as a whole fairly instruct the jury and create no injustice. See Wilson, 967 So.2d at 36-37; Milano, 790 So.2d at 184. Here, the jury received two instructions, S-5 and S-6A, *402 that fairly stated our aiding-and-abetting law. Baxter also raised a contributing-cause defense, and therefore the trial court did not abuse his discretion in granting an instruction on this point. Given that aiding and abetting, as well as contributing causes, were issues in this trial, we cannot say, taking the instructions as a whole, that the jury was not fairly informed of the relevant law or that S-7 created an injustice. See Wilson, 967 So.2d at 36-37; Milano, 790 So.2d at 184.
¶ 22. Moreover, S-7, contrary to Baxter’s argument, did not allow the jury to convict him for the sheriffs murder because he failed to appear at his sentencing hearing. The thrust of Baxter’s argument is that the phrase “unlawful act” in the instruction is so broad that the jury could have convicted him for murder simply because he missed his court date. Arguably, one could read the instruction as Baxter claims. But, given the context of the case, when read with the other jury instructions, it is clear that the instruction is referring to the unlawful acts of evading law enforcement or encouraging another to do so.
¶ 23. A central theme of the State’s case was that Baxter unlawfully fled from law enforcement or encouraged Williams to do the same. There was testimony that while they were fleeing from the police, Williams said “they’re everywhere, they’re everywhere,” to which Baxter replied “go, just go.” This testimony came from Baxter’s aunt, who was speaking with Williams on the phone during the chase. The cell phone records show that the call to Williams was at 2:49 and lasted eighty-eight seconds. The George County Sheriffs Department’s dispatch log shows that, at 2:53, deputies reported that the sheriff had been struck. While the record does not clarify who Williams was referring to as “they,” a reasonable juror could infer from the circumstance that “they” were the police. And given the close time proximity between the phone call and the time the deputies reported that the sheriff had been hit, a reasonable juror could just as easily infer “they” specifically referred to the roadblock where the sheriff was killed. This inference is bolstered by the fact that the record suggests that only one deputy was actually in pursuit of Williams and Baxter during the chase.
¶ 24. Additionally, in his confession, Baxter stated he wouldn’t let Williams out of the truck. He stated that he told her “b* ⅜ * ⅜ go” when the deputy got behind them, and he warned her not to stop. And after the sheriff was struck, Baxter said he made Williams go with him to the trailer to evade the police. Baxter also confessed that he was driving at the time the sheriff was hit. As a result, it appears that Baxter was either driving or directing Williams during the entire event. See Graham, 120 So.3d at 389 (aiding and abetting is the offense committed by a person present at the commission of a crime who is hot the principal but commits some act with the intent to render aid to the actual perpetrator).
¶25. Accordingly, we find the instruction, when read with the other instructions and given the context of the case, referred to the unlawful act of evading law enforcement or encouraging Williams to do so.
¶ 26. Baxter also claims that the Court of Appeals erred in applying a similar analysis and reaching the same conclusion. Baxter claims the jury instructions as a whole could not cure S-7 because the instructions, taken together, confused the jury. As evidence of this confusion, Baxter, for the first time on appeal, points to a note the jury sent the trial judge. The note stated:
In Item 2 of the capital murder directive, is “in conjunction with” all that is required? Explanation: we are hav *403 ing some conflict between “in conjunction with” and if the Defendant was “directing.” 3:51 pm.
The trial judge, without objection, responded:
Members of the jury, you have received all of the evidence introduced during the course of this trial as well as the instructions of the Court. Please continue your deliberations.
¶27. The record contains no evidence that this note referenced any confusion as to S-7. The two instructions from which it seems the “in conjunction with” and “directing” language were taken were instructions S-3A and S-6, both of which were correct statements of the law (S-3 contained “in conjunction with;” S-6 referenced “directing;” S-7 mentioned neither). And, importantly here, if the jury found Baxter killed the sheriff in conjunction with Brandy Williams, or that the sheriff was killed while Baxter was directing Brandy Williams to drive recklessly in disregard for human life, he was guilty of depraved-heart murder either way.
¶ 28. As a result, we hold that, while S-7 was imprecise, we cannot say that the instruction, when read with the other instructions, constituted reversible error. The jury received two correct instructions, and the overwhelming evidence at trial supported Baxter’s conviction either as a principal or as an aider and abettor.[6] See Jones v. State, 95 So.3d 641, 650 (Miss. 2012) (recognizing that when jury instructions, read as a whole, properly state the applicable law, there is no error).

Jury Instruction S-7 in Williams v. State

¶29. Turning back to Williams, we note that, while we do not take a position one way or the other on the Court of Appeals’ ruling in that case, as it is not before us, we do find it necessary to explain why today’s holding differs from the holding in Williams regarding S-7.
¶ 30. First, the objection in Williams, in part, was different from Baxter’s. Williams argued that the instruction addressed contributory causes, which were not relevant because the collision between the truck and Sheriff Welford was the sole cause of death. Williams, 174 So.3d at 282. Baxter did not raise this objection at trial or on appeal, and as a result, we do not consider it here. See Medina v. State, 688 So.2d 727, 729 (Miss.1996) (noting that this Court does not consider issues not properly before the Court).
¶31. Secondly, while both cases arise out of the same factual background, the context of S-7 is different as applied to Baxter and Williams. In Williams, an abandonment defense was asserted. Williams, 174 So.3d at 282-283. Williams claimed she abandoned the effort to flee law enforcement during the chase. Baxter did not raise this defense. As a result, there was no danger in Baxter, as the Court of Appeals found in Williams, that the jury could read S-7 as requiring Baxter to have to prove he abandoned his flight. See id.
¶32. In sum, while we do not review the merits of Williams as the Court of Appeals did, we do find that today’s case is sufficiently different that the two rulings are not in conflict.
2. The circuit court erred in admitting Baxter’s involuntary, unreliable and coerced “confession.”
¶33. The circuit court held Baxter’s confession admissible in the instant case but not in Williams’s case. At first blush, *404 this may seem contradictory; however, the admissibility of the confession in these two cases came under different legal rules. In Williams, the defendant offered the confession, and it was reviewed under our hearsay rules in the Mississippi Rules of Evidence. Williams, 174 So.3d at 278. In Baxter, the State offered the confession and the issue was not hearsay, but whether the confession was knowing, voluntary, and intelligent. Baxter, 177 So.3d at 433-38, 2014 WL 3715840, at **5-9. Under these two different legal theories, it is possible for the same confession to be admissible in one case and not in the other.
¶ 34. Again, we note that we make no findings regarding Williams,[7] but suffice it to say that, under Mississippi Rule of Evidence 804(b)(3), a key consideration in criminal cases is the reliability of exculpatory hearsay evidence. M.R.E. 804(b)(3). In contrast, reliability and veracity are not considerations in determining the admissibility of an accused’s own confession. Richardson v. State, 722 So.2d 481, 488 (Miss.1998). In determining whether a defendant validly waived his or her Miranda rights,[8] the trial judge must make a factual determination, from the totality of the circumstances, that the waiver was made intelligently, knowingly, and voluntarily. Id.] see also Holland v. State, 587 So.2d 848, 860 (Miss.1991) (quoting State v. Whitaker, 215 Conn. 739, 578 A.2d 1031, 1039 (1990)) (recognizing that determinations of voluntariness “should focus on defendant’s ‘experience with the police and familiarity with warnings; intelligence, including I.Q.; age; education; vocabulary and ability to read and write in the language in which the warnings were given; intoxication; emotional state; mental disease, disorder or retardation’ ”). The truthfulness or reliability of those statements, if obtained properly, is a question for the jury. Rogers v. Richmond, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961) (“The attention of the trial judge should [be] focused ... on the question whether the behavior of the State’s law enforcement officials was such as to overbear petitioner’s will to resist and bring about confessions not freely self-determined — a question to be answered with complete disregard of whether or not petitioner in fact spoke the truth.”). Accordingly, we find no error in the Court of Appeals’ ruling in Baxter to the extent the court held that truthfulness was not a factor in determining the admissibility of Baxter’s confession.
¶ 35. Baxter also argued that, because of his mental disability and the facts surrounding his confession, the trial court erred in finding it was intelligently and voluntarily made. When considering the issue of intellectual disability in this context, “the trial judge must first determine whether the accused, prior to the confession, understood the content and substance of the Miranda warning and the nature of the charges of which he was accused.” Williams v. State, 115 So.3d 774, 778 (Miss.2013) (quoting Martin v. State, 871 So.2d 693, 701 (Miss.2004)). Furthermore, mild intellectual disability of “the defendant does not render a confession per se involuntary; rather, the defendant’s mental abilities are but one factor to be considered.” Id. And, as noted above, the Court in Holland recognized a number *405 of these factors, including the defendant’s familiarity with the Miranda warnings, his IQ, and any mental disease, disorder, or intellectual disability. Holland, 587 So.2d at 860.
¶ 36. Recently, in Williams v. State, not to be confused with Brandy Williams v. State, this Court considered the same argument as put forth by Baxter that a person who is intellectually disabled cannot knowingly waive his Miranda rights. There, the Court noted the above rule and reaffirmed that, under Mississippi law, mental disability alone does not render a confession involuntary per se. Williams, 115 So.8d at 778.
¶ 37. Nevertheless, Baxter urges this Court to adopt the position of the dissent in Williams. There, the dissent expressed concern that someone with Williams’s IQ, which was 55, could not knowingly and intelligently waive her Miranda rights. Id. at 779-80. Specifically, Baxter points to the dissent’s discussion of the susceptibility of mildly retarded individuals to suggestive leading questions by law enforcement. Baxter claims that his answers in his confession were the product of law enforcement’s leading questions.[9]
¶ 38. But we find no reason to depart from our prior holdings. See Stone v. Reichman-Crosby Co., 43 So.2d 184, 190 (Miss.1949) (discussing the principle of stare decisis). Baxter offers no evidence, much less compelling evidence, that our prior holdings have perpetuated a pernicious error. See id. Furthermore, the dissent in Williams was directed at individuals with IQs between 50 and 55. Williams, 115 So.3d at 779-80. Baxter, according to his expert, has an IQ of 65, and according to the State, an IQ of 75.
¶ 39. More to the point, the trial court in the current case clearly considered Baxter’s low IQ. Specifically, the trial court noted that, considering Baxter’s mental disability and the totality of the circumstances, including possible carryover knowledge from prior arrests, he found the Miranda waiver to be knowing, intelligent, and voluntary. And, as this Court has held, “As long as the trial judge applies the correct legal standards, his decision will not be reversed on appeal unless it is manifestly in error, or is contrary to the overwhelming weight of the evidence.” Chamberlin v. State, 989 So.2d 320, 331-32 (Miss.2008).
¶ 40. Here, the trial court specifically considered the testimony of two experts, both of whom found Baxter competent to stand trial, although he was intellectually disabled under Atkins and Chase.[10] When asked if Baxter had the mental capacity to knowingly waive his Miranda rights, the experts reached somewhat different conclusions, though their testimony supported the trial court’s findings. Dr. Criss Lott, testifying for the State, stated that Baxter could knowingly and, to some degree, intelligently waive his Miranda rights, depending on how “intelligently” was defined. Later in his testimony, Dr. Lott clarified, and unequivocally provided that, in his opinion, *406 Baxter had the capacity to waive his Miranda rights. Dr. Gerald O’Brien, testifying for Baxter, was more equivocal. Dr. O’Brien testified that if someone simply read the Miranda warning to Baxter, giving him a copy to follow along, in a “one-shot deal,” Baxter would “probably not” understand the waiver. But, Dr. O’Brien acknowledged that, Baxter may have had “carryover knowledge” of his Miranda rights from his previous arrests, and that he observed no indication, including from the police interview as well as his own interview, that Baxter did not understand his Miranda waiver.
¶ 41. Under these circumstances, we cannot say the trial court committed manifest error or that his ruling was against the overwhelming weight of the evidence. Accordingly, we affirm.
CONCLUSION
¶ 42. For the above-mentioned reasons, Baxter’s conviction and sentence in the Circuit Court of George County and the judgment of the Court of Appeals are affirmed.
¶ 43. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED. CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE POSSIBILITY OF PAROLE, AFFIRMED. SENTENCE IN THIS CAUSE SHALL RUN CONSECUTIVELY WITH SENTENCES IN CAUSE NUMBERS 2009-10,073 AND 2010-10,057.
DICKINSON AND RANDOLPH, P. JJ., LAMAR, CHANDLER AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J. PIERCE, J., NOT PARTICIPATING.

. Chase v. State, 873 So.2d 1013 (Miss.2004).

. Baxter also asserts the trial court erroneously admitted evidence of his prior convictions. The Court of Appeals found that Baxter waived his objection to the admission of his prior convictions when he withdrew his objection to the State admitting an unedited version of his videorecorded confession. The unredacted confession included references to prior convictions and drug use. Because we agree with the Court of Appeals on this issue, we decline to address it.

. In his petition for certiorari, Baxter claims the Court of Appeals, in finding his argument regarding S-7 on appeal procedurally barred, ignored “the thrust” of Sandstrom v. Montana, 442 U.S. 510, 517, 99 S.Ct. 2450, 2456, 61 L.Ed.2d 39 (1979). That case, however, does not address procedural bars regarding jury instructions. There, the United States Supreme Court addressed the potential for jury confusion created by instructions that allowed a jury to presume malice based on the defendant’s voluntary acts. Sandstrom, 442 U.S. at 517, 99 S.Ct. 2450. The case is of no moment in the instant matter.

. Under Mississippi law, "[a]iding and abetting is ‘the offense committed by those persons who, although not the direct perpetrators of a crime, are yet present at its commission, doing some act to render aid to the actual perpetrator.' " Graham v. State, 120 So.3d 382, 389 (Miss.2013), reh’g denied (Sept. 12, 2013) (quoting Smith v. State, 237 Miss. 498, 115 So.2d 318, 322 (1959) (internal citation- omitted)). That is, "any person who is present at the commission of a criminal offense and aids, coun-seis, or encourages another in the commission of that offense is an aider and abettor and is equally guilty with the principal offender.” Id. (citing Swinford v. State, 653 So.2d 912, 915 (Miss.1995)).

. Instruction S-6 in this case is identical to the Milano instruction with the exception of the last paragraph, which the parties omitted by agreement.

. And while we find no reversible error in the context of today’s case, this opinion should not be read as an endorsement of jury instruction S-7.

. The Court of Appeals in Williams held the trial court committed reversible error in excluding Baxter’s statements in Williams's trial because the confession met the reliability requirements under the hearsay rule. Williams, 174 So.3d at 282.

. Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S.Ct. 1602, 1629-30, 16 L.Ed.2d 694, 726 (1966).

. Baxter also claims that in Brandy Williams v. State, the State affirmatively argued that Baxter’s confession was the product of suggestive questioning, implying the law enforcement officers took advantage of Baxter's weak intellect to obtain a false confession. A review of the State's motion and oral argument before the trial court do not support this contention. The State in Williams argued only that Baxter’s statement lacked credibility, and that it evolved as law enforcement officials revealed that they suspected Baxter was lying about certain aspects of his version of events.

. Atkins v. Virginia, 536 U.S. 304, 306, 122 S.Ct. 2242, 2244, 153 L.Ed.2d 335 (2002).