# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49474-4-II |
| Respondent, | |
| v. | |
| CLEON ORVILLE MOEN, | PUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Cleon Orville Moen appeals his conviction for aggravated first degree murder and his sentence to mandatory life imprisonment without the possibility of parole.  Moen argues that the trial court abused its discretion by denying his midtrial motion to excuse a juror and that his sentence under RCW 10.95.030(1) violates the constitutional prohibition against cruel punishment.  Moen raises several additional issues in his Statement of Additional Grounds (SAG) for Review.  We affirm Moen's conviction and sentence.

## FACTS

### I.  BACKGROUND

In 2014, Moen was charged with fourth degree assault against his wife, Michelle.[1] Michelle testified at the trial.  The trial resulted in a hung jury.  Immediately after the trial, Moen attempted to commit suicide by shooting himself in the head with a shotgun in the courthouse parking lot.  Moen sustained a number of injuries as a result of the gunshot.

---

[1] We refer to Michelle Moen by her first name to avoid confusion and intend no disrespect.

Soon after, Moen filed for divorce and moved out of the residence he shared with Michelle. Later, Michelle filed a motion to hold Moen in contempt for failing to make required property and maintenance payments. After Moen was served with notice of Michelle's motion, he hid in a trailer located on Michelle's property. Moen waited for Michelle to leave the home and broke into the residence. When Michelle returned, Moen struck her in the head with an axe. A struggle ensued, and Moen strangled Michelle to death with an electrical cord.

After strangling Michelle, Moen attempted to commit suicide by asphyxiating himself. The police apprehended Moen, and the State charged him with aggravated first degree murder.[2] Moen was 73 years old.

## II. TRIAL

At trial, witnesses testified to the above facts. During a break on the first day of trial, juror 4 notified the bailiff that Moen's family had contacted her to establish long-term care for Moen after his gunshot injuries. Juror 4 was the executive director of an assisted living facility. The trial court questioned juror 4:

> THE COURT: Okay. So why don't you tell us what happened or what information you learned . . . .
> JUROR: I don't recall if it was the family that first came to us or if we received paperwork from the hospital with medical information about the gunshot wound. I didn't realize that until it was mentioned this morning that there was a gunshot wound. And the family did come in shortly after that looking for placement. I only met family. We did not take him. We didn't feel that that was the right care for him.
> THE COURT: Okay. So the family that came in, do you remember who the family members were?
> JUROR: I don't, no.

---

[2] RCW 9A.32.030(1)(a); *see* RCW 10.95.020(8), (11), (14); former RCW 9.94A.533(3), (4) (2015).

THE COURT: How many people, any idea?

JUROR: I want to say it was one, maybe two.

THE COURT: Maybe two people? And do you have an estimate about the time that you spent with them?

JUROR: Maybe a half-hour, if that.

THE COURT: Okay. And do you recall any information that they may have shared related to why the care needed to be or just any background information?

JUROR: The only thing that I recall is that the family was looking for placement because of the gunshot wound.

. . . .

THE COURT: . . . [D]id you gain information or learn any information about Mr. Moen, the circumstances of how the gunshot was inflicted or the circumstances surrounding it?

JUROR: Just that it happened outside the courthouse.

. . . .

[MOEN]: . . . Because it was Mr. Moen's family members, I mean, would you feel now that you'd have to convict him because you'd have to bend over backwards to show neutrality?

JUROR: No.

[MOEN]: You can still keep an open mind on it?

JUROR: Yes.

3 Verbatim Report of Proceedings (VRP) at 317-19. Juror 4 also stated that she was able to decide the case based on the facts and evidence.

Moen moved to excuse juror 4, arguing that she could not be impartial because she had met Moen's family members and because she would convict Moen to prove her impartiality. The trial court denied Moen's motion. The trial court determined that juror 4 did not demonstrate bias or prejudice because she stated that she would be able to keep an open mind throughout trial. The trial court also noted that juror 4 had limited contact with Moen's family and could not recall anything of substance.

Moen asserted a diminished capacity defense at trial. Moen's expert witness, Robert Stanulis, diagnosed Moen with frontal temporal dementia and testified that Moen's symptoms

were more consistent with dementia than a personality disorder. Stanulis also stated that those with dementia suffer from memory problems, personality changes, and disordered thinking. The State's expert witness, Ray Hendrickson, diagnosed Moen with adjustment disorder and a history of major depressive disorder.

The jury found Moen guilty of aggravated first degree murder.

### III. SENTENCING

At sentencing, Moen requested that the trial court impose an exceptional downward sentence because his dementia diagnosis was a mitigating circumstance. Moen argued that although RCW 10.95.030(1) prescribes a mandatory life sentence without the possibility of parole, a life imprisonment sentence constituted cruel punishment under the federal and state constitutions because Moen had been diagnosed with dementia.

The trial court denied Moen's request, determining that a sentence of life imprisonment was not cruel punishment and that any consideration of mitigating circumstances was barred by RCW 10.95.030(1). The trial court subsequently sentenced Moen to mandatory life imprisonment without the possibility of parole under RCW 10.95.030(1). Moen appeals.

### ANALYSIS

Moen argues that the trial court abused its discretion by denying his midtrial motion to excuse juror 4 and that his sentence under RCW 10.95.030(1) violates the constitutional prohibition against cruel punishment. We disagree.

I. MOTION TO EXCUSE JUROR

Moen argues that the trial court abused its discretion in denying his midtrial motion to excuse juror 4 because the juror failed to disclose that she met with members of Moen's family to discuss long-term care.[3] We disagree.

We review a trial court's decision about whether to excuse a juror for an abuse of discretion. *State v. Depaz*, 165 Wn.2d 842, 852, 204 P.3d 217 (2009). The trial court is best able to observe the juror's demeanor and, based on that observation, interpret and evaluate the juror's answers to determine the juror's impartiality. *State v. Davis*, 175 Wn.2d 287, 312, 290 P.3d 43 (2012). A trial court abuses its discretion when its decision is based on untenable grounds or reasons. *Depaz*, 165 Wn.2d at 852.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a defendant the right to a criminal trial by an impartial jury. *State v. Yates*, 161 Wn.2d 714, 742, 168 P.3d 359 (2007). A trial court is required to excuse from further jury service any juror, who in the opinion of the judge, has manifested unfitness by reason of bias or prejudice. RCW 2.36.110. "The question for the judge is whether the

---

[3] Moen suggests that juror 4 demonstrated implied bias because she had an affinity within the fourth degree to Moen. A juror must be excluded when she demonstrates implied bias. *State v. Slert*, 186 Wn.2d 869, 877, 383 P.3d 466 (2016). RCW 4.44.180(1) provides four bases by which a juror may be excluded for implied bias, including a juror's "[c]onsanguinity or affinity within the fourth degree to either party." But juror 4 did not have any relation to Moen. *See State v. Boiko*, 138 Wn. App. 256, 264, 156 P.3d 934 (2007). Moreover, RCW 4.44.180 does not provide that a juror's knowledge of a case demonstrates implied bias. Accordingly, juror 4 did not demonstrate implied bias under RCW 4.44.180(1).

challenged juror can set aside preconceived ideas and try the case fairly and impartially." *Hough v. Stockbridge*, 152 Wn. App. 328, 341, 216 P.3d 1077 (2009).

Moen relies on *State v. Cho*, 108 Wn. App. 315, 30 P.3d 496 (2001), to support his argument that juror 4 failed to disclose material information and exhibited bias. However, *Cho* is distinguishable. In *Cho*, a juror did not disclose that he was a retired police officer during voir dire. 108 Wn. App. at 319. The juror's answers during voir dire "raise[d] a troubling inference of deliberate concealment." 108 Wn. App. at 327. The *Cho* court determined that it could presume the juror's bias because he deliberately construed his answers during voir dire to conceal that he had been employed as a police officer. 108 Wn. App. at 328.

Here, there is no inference that juror 4 deliberately concealed any facts. During voir dire, the jury was not offered any information regarding Moen's attempted suicide. In addition, juror 4 informed the bailiff of the potential conflict soon after hearing trial testimony regarding Moen's attempted suicide and resulting injuries.

The trial court examined juror 4 about any potential bias, and juror 4 unequivocally stated that she would decide the case fairly, based on the facts and evidence presented. Juror 4 did not demonstrate bias or prejudice. Accordingly, the trial court's decision not to excuse juror 4 was based on tenable grounds, and the court did not abuse its discretion.

## II. CRUEL PUNISHMENT

Moen argues that RCW 10.95.030(1), which requires that a defendant convicted of aggravated first degree murder be sentenced to mandatory life imprisonment without the possibility of parole, is unconstitutional because the statute violates article I, section 14's

prohibition against cruel punishment. Specifically, Moen argues that the cruel punishment clause of both the federal and state constitutions categorically bars those with dementia from being sentenced under RCW 10.95.030(1).[4] We disagree. Sentencing a defendant with dementia to mandatory life imprisonment without the possibility of parole under RCW 10.95.030(1) is not categorically barred by article I, section 14's prohibition against cruel punishment.

A.      *Legal Principles*

The constitutionality of a statute is a question of law that we review de novo. *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008). We presume that a statute is constitutional. 163 Wn.2d at 282. The party challenging the statute bears the burden of proving its unconstitutionality beyond a reasonable doubt. 163 Wn.2d at 282.

RCW 10.95.030(1) provides that "any person convicted of the crime of aggravated first degree murder shall be sentenced to life imprisonment without possibility of release or parole." RCW 10.95.030(1) does not give a trial court discretion to consider mitigating factors and depart from the prescribed life sentence. *State v. Meas*, 118 Wn. App. 297, 306, 75 P.3d 998 (2003).

Article I, section 14 of the Washington Constitution prohibits "cruel punishment." *State v. Witherspoon*, 180 Wn.2d 875, 887, 329 P.3d 888 (2014). Similarly, the Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. 180 Wn.2d at 887.

---

[4] Moen argues that it is cruel to sentence "elderly persons with age-related mental infirmities" to mandatory life imprisonment without the possibility of parole under RCW 10.95.030(1). Br. of Appellant at 33. Moen alleges that he suffers from the age-related mental infirmity of dementia. As a result, we address only the narrow issue of whether it is cruel to sentence a person diagnosed with dementia to mandatory life imprisonment without the possibility of parole.

Washington's constitutional provision is more protective than its Eighth Amendment counterpart. 180 Wn.2d at 887.

A defendant's sentence is considered cruel "when it is grossly disproportionate to the crime for which it is imposed." *State v. Morin*, 100 Wn. App. 25, 29, 995 P.2d 113 (2000). A defendant may challenge the proportionality of his sentence in two different ways.[5] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 2021, 176 L. Ed. 2d 825 (2010). First, a defendant may argue that his sentence is grossly disproportionate given the circumstances of that particular defendant. 130 S. Ct. at 2021. Federal courts refer to this type of challenge as an "as-applied" challenge. *See United States v. Shill*, 740 F.3d 1347, 1355 (9th Cir. 2014); *United States v. Cobler*, 748 F.3d 570, 575 (4th Cir. 2014). When reviewing an as-applied challenge, we compare the defendant's sentence to (1) the gravity of the defendant's offense and the harshness of the penalty, (2) sentences for other offenses in the same jurisdiction, and (3) sentences for similar offenses in other jurisdictions. *Graham*, 130 S. Ct. at 2022; *see Cobler*, 748 F.3d at 576.

Second, a defendant may assert a categorical challenge, arguing that an entire class of sentences is disproportionate based on "the nature of the offense" or the characteristics of a class of offenders. *Graham*, 130 S. Ct. at 2022. When a defendant raises a categorical challenge to his sentence, we conduct a two-step analysis. *See* 130 S. Ct. at 2022. First, we consider "'objective indicia of society's standards, as expressed in legislative enactments and state

---

[5] "Although the federal courts' interpretations of federal law are not binding on this state's interpretation of parallel state laws and constitutional provisions, the opinions of the United States Supreme Court 'are nevertheless important guides on the subjects which they squarely address.'" *State v. Fortune*, 128 Wn.2d 464, 474-75, 909 P.2d 930 (1996) (quoting *State v. Gunwall*, 106 Wn.2d 54, 61, 720 P.2d 808 (1986)).

practice' to determine whether there is a national consensus against the sentencing practice at issue." 130 S. Ct. at 2022 (quoting *Roper v. Simmons*, 543 U.S. 551, 572, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005)). We also consider actual sentencing practices in our consensus inquiry. 130 S. Ct. at 2023.

Then, we look to "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose." *Kennedy v. Louisiana*, 554 U.S. 407, 128 S. Ct. 2641, 2650, 171 L. Ed. 2d 525 (2008). We also exercise our independent judgment and consider the culpability of the defendants at issue in light of their crimes and characteristics, as well as the severity of the sentence at issue. *Graham*, 130 S. Ct. at 2026.

B.      *Categorical and As-Applied Challenges*

As an initial matter, the State argues that we should analyze Moen's argument as an as-applied challenge to his sentence, the standard of which is detailed in *State v. Fain*, 94 Wn.2d 387, 617 P.2d 720 (1980). We disagree.

In *Fain*, the defendant argued that his life sentence under the habitual offender statute was unconstitutional because it constituted cruel punishment under article I, section 14 of the state constitution and was disproportionate to the nature of his crimes. 94 Wn.2d at 390-91, 402. The Washington Supreme Court held that courts are to consider four factors when determining whether a defendant's sentence is proportional to the specific set of facts in his case. 94 Wn.2d at 396-97. The four factors are: "(1) the nature of the offense; (2) the legislative purpose behind the . . . statute; (3) the punishment defendant would have received in other jurisdictions for the

same offense; and (4) the punishment meted out for other offenses in the same jurisdiction." 94 Wn.2d at 397.

*Fain* is inapposite here. The *Fain* court addressed whether the defendant's life imprisonment sentence was disproportionate given the circumstances of the particular defendant's crime. As a result, the defendant brought an as-applied challenge to his sentence. *See Graham*, 130 S. Ct. at 2022. Moen's argument on appeal is wholly different from an as-applied challenge. Moen does not argue that his sentence is disproportionate only because he was diagnosed with dementia. Instead, Moen argues that, as a rule, it is unconstitutional to sentence *a class of defendants*, those suffering from dementia, to mandatory life imprisonment. Accordingly, Moen raises a categorical challenge to his sentence. *See* 130 S. Ct. at 2022.

Because Moen "challenges a sentencing statute as applied to a class of [defendants], rather than solely the constitutionality of his sentence alone, the categorical approach is necessary." *State v. Bassett*, 198 Wn. App. 714, 738, 394 P.3d 430 (2017). Thus, we reject the State's argument, and we review Moen's argument as a categorical challenge to his mandatory life imprisonment sentence.

C.       *Categorical Challenge Analysis*

The two-step analysis for a categorical challenge requires us to consider (1) objective indicia of society's standards to determine whether there is national consensus against sentencing those with dementia to mandatory life imprisonment and (2) our own understanding of the prohibition of cruel punishment. *See Graham*, 130 S. Ct. at 2022, 2026. We hold that sentencing a defendant with dementia to mandatory life imprisonment without the possibility of

parole under RCW 10.95.030(1) is not categorically barred by article I, section 14's prohibition against cruel punishment.

Moen does not provide any legislative enactments or state practices regarding sentencing those with dementia to mandatory life imprisonment without the possibility of parole. And our review of other jurisdictions' statutes and case law shows that there is no national consensus against sentencing those with dementia to life imprisonment. Rather, several jurisdictions have held that it is not cruel or unusual to sentence an elderly defendant with infirmities to either death or life imprisonment. *Allen v. Ornoski*, 435 F.3d 946, 954 (9th Cir. 2006) (holding that the Eighth Amendment does not forbid execution of "elderly and infirm" death-row inmates); *Commonwealth v. Green*, 406 Pa. Super. 120, 122, 593 A.2d 899 (1991) (holding that sentencing an elderly defendant who suffers from a number of infirmities to life imprisonment does not violate the prohibition against cruel and unusual punishment).

Moreover, in our independent judgment, sentencing a defendant diagnosed with dementia to mandatory life imprisonment is not cruel punishment under article I, section 14. Washington courts have historically held that it is not cruel to sentence a defendant convicted of aggravated first degree murder to a mandatory sentence of life without the possibility of parole. *In re Pers. Restraint of Snook*, 67 Wn. App. 714, 720, 840 P.2d 207 (1992). Moen suggests that those diagnosed with dementia are less morally culpable. However, the jury rejected Moen's diminished capacity defense at trial. Even assuming that those with dementia are less culpable due to mental deficiencies, Moen has not shown that it is cruel to imprison such a defendant for the remainder of his life.

11

Moen argues that we should extend our holding in *Bassett* to defendants who have been diagnosed with dementia because both juveniles and those with dementia "have difficulty regulating impulse control, are poor at estimating risks, and engage in ill-considered behavior." Br. of Appellant at 38-39. But Moen's comparison of those with dementia to juveniles is unavailing.

In *Bassett*, we determined that juvenile defendants are categorically barred from being sentenced to life imprisonment without the possibility of parole under RCW 10.95.030(3)(a)(ii). 198 Wn. App. at 744. Precedent establishes that juveniles are constitutionally different than adults for purposes of sentencing because juveniles have diminished culpability and greater prospects for reform. *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 2464, 183 L. Ed. 2d 407 (2012). Juveniles have "a 'lack of maturity and an underdeveloped sense of responsibility,' leading to recklessness, impulsivity, and heedless risk-taking." 132 S. Ct. at 2464 (quoting *Roper*, 125 S. Ct. at 1195). Juveniles also have a greater capacity to change and reform their deficiencies than adults. 132 S. Ct. at 2464-65.

Moen's argument is unpersuasive because he fails to show that those who suffer from dementia similarly have diminished culpability. Juveniles are precluded from mandatory life sentences in part because of their prospects to rehabilitate as their brains develop. But Moen does not argue that defendants diagnosed with dementia may improve their mental conditions or be rehabilitated. In addition, Moen does not demonstrate that the moral culpability of those with dementia is lessened by virtue of their illness.

Moen's citation to cases prohibiting death sentences for those with intellectual disabilities is similarly unpersuasive because Moen was not sentenced to death. A number of jurisdictions have affirmed sentences of life imprisonment without parole for intellectually disabled or brain damaged defendants. *Commonwealth v. Jones*, 479 Mass. 1, 18, 90 N.E.3d 1238 (2018) (holding that it is not cruel and unusual punishment to sentence a defendant who has been diagnosed with a developmental disability to life in prison without the possibility of parole); *Baxter v. Mississippi*, 2012-KA-01032-COA, 177 So. 3d 423, ¶ 83 (Miss. Ct. App. 2014) (stating that the defendant's "intellectual disability only precluded the death penalty, not life imprisonment without parole"), *aff'd*, 2012-CT-01032-SCT, 177 So. 3d 394 (Miss. 2015). These decisions implicitly recognize that it is not unconstitutional to sentence a defendant with mental deficits to prison for the remainder of his life.

Moen fails to meet his burden in showing that RCW 10.95.030(1) is unconstitutional. Consequently, we hold that sentencing a defendant with dementia to mandatory life imprisonment without the possibility of parole under RCW 10.95.030(1) is not categorically barred by article I, section 14's prohibition against cruel punishment.[6]

D.    *Consideration of Mitigating Circumstances*

Moen also briefly argues that the trial court erred by failing to consider his dementia as a mitigating circumstance during sentencing. A trial court's discretion to impose a sentence is

---

[6] Because we determine that Moen's mandatory life imprisonment without the possibility of parole does not violate article I, section 14 of the state constitution, we do not further analyze Moen's sentence under the Eighth Amendment. *Witherspoon*, 180 Wn.2d at 887.

limited to that granted by the legislature. *State v. Soto*, 177 Wn. App. 706, 713, 309 P.3d 596 (2013). As stated above, RCW 10.95.030(1) does not give the trial court discretion to consider mitigating factors and depart from the prescribed life sentence. *Meas*, 118 Wn. App. at 306. Accordingly, the trial court did not err in determining that RCW 10.95.030(1) prohibited it from considering mitigating circumstances when imposing Moen's sentence.[7]

## CONCLUSION

We affirm Moen's conviction and sentence because the trial court did not abuse its discretion in denying Moen's midtrial motion to excuse a juror and because sentencing a defendant with dementia to mandatory life imprisonment without the possibility of parole under RCW 10.95.030(1) is not categorically barred by article I, section 14's prohibition against cruel punishment.

Worswick, J

We concur:

Maxa, C.J.

Lee, J.

---

[7] Moen filed a SAG contending that he received ineffective assistance of counsel and that the trial court erred in denying his expert witness's, Stanulis, request to testify out of order due to a pre-scheduled vacation. Because Moen's ineffective assistance of counsel claim depends on facts outside the record on appeal, we do not review it. Additionally, the record does not support Moen's claim that the trial court erred in denying Stanulis's request to testify out of order. On the contrary, the trial court permitted Stanulis to testify out of order.